The next case is also Massimo v. Apple, 2022-2069, 70-71 and 70-72. Mr. Lawson again. I think we're back to pronounced curvature theory again. Thank you, Your Honor. I'm going to touch on the optics theory again briefly because in this third appeal, there was a different theory which was most pronounced curvature. And then I'm going to briefly talk about some dependent claims that we believe there's not evidence to support in validity of those dependent claims. First of all, in this particular appeal, there's no adhesion motivation or Osaki decision, at least not yet by the board. It's really all about the optics and reliance on Inokawa to improve light collection. And interestingly, in this appeal, in Apple's brief, Apple admitted, quote, a convex lens would generally cause incoming light to condense toward the center. And that's consistent with what Apple's petition argued. And we believe the board should have addressed, adequately addressed in its decision. And if you look at Apple's brief, I'm sorry, our reply brief at pages six to seven. Take a moment to look at it, to go there if you'd like. You see a variety of lens shapes throughout these appeals. And, you know, whether it's the greatest curvature theory, most pronounced curvature theory, our view is you look at these illustrations and they really don't support Apple's theory that a person is still in the art world and led to this combination. In some cases, it looks like the most pronounced curvature is right over the center LED. In other cases, we don't see any of that curvature at all. And so, you know, we think the board should have addressed those inconsistencies. And under personal web, we think it's important that that there be a clear evidence based explanation of the combination, how it works. And particularly in this case where there's a universe of potential lens shapes, that clear description that can be really analyzed and understood is what tells us that a person of skill in the art would have really been led to these particular claims. And we just don't have that in the record here. I also want to discuss also a failure to explain why a most pronounced curvature theory, I'll go with that in this appeal, would lead to a single lens over multiple detectors, which was not in the prior art, which is the basis for the claims being allowed that Massimo disclosed. And we know from the case law that, you know, there needs to be a reason for the specific design choice made, that's cuts forth. And there needs to be showing that a person of skill in the art would combine the elements the way the claim invention does, like an active video. And what we don't have is a connection between the person of skill in the art wants to place a greatest curvature, or excuse me, in this appeal, most pronounced curvature near the detector. Why would that lead a person of skill in the art to place a single lens over multiple detectors? Why wouldn't that lead a person of skill in the art to place a convex surface over each detector as was shown in the prior art? In fact, that would provide you more curvature near the detector. And especially where this is not a case where there's just a few simple design choices and a person of skill in the art would choose among them, where there's a universe of potential design shapes, we think that pull is very important. Now I'm going to briefly just discuss some dependent claims and then a little bit on reasonable expectation of success, if there's time. Are you independently challenging the mean path length limitation? Yes, that's what I'm going to address now. Perfect. So in this petition, we have particular dependent claims that require that the light permeable cover is configured to reduce a mean path length of light traveling to the at least four detectors. Apple's expert agree that mean path length meant on average, the average path length of light entering the convex surface. In Apple's petition and in Apple's expert declaration, Apple's expert addressed this by showing that light would be directed towards the center. And he said the light would be directed towards the center, referring to the light as a whole, as far as we could possibly discern. And that was consistent with Apple's overall theory that light would be condensed toward the center. And that's how Apple showed that claim limitation was satisfied. The issue we have is now that the board adopts a greatest curvature theory, as opposed to just a simple theory that light would be directed towards the center. We have no expert testimony supporting the invalidity of those claims. And in fact, in this appeal, what the board said was, in this case, they did look at that particular evidence, not the many admissions from the deposition. But the board did talk about what Apple's expert said in this declaration and how that arrow pointed to the center. And it said the light would condense toward the center. And the board said, no, that's not what he meant. That's not what he said. In fact, he was just analyzing the flow of a single, he was just analyzing how a single ray of light would go towards the center. And Apple's expert testified that, well, in connection with discovering this flaw in the theory, that that was just showing the path of a single light. And if he performed the analysis for a number of additional rays of light, if he did that analysis, that would show that mean path length is reduced. Essentially acknowledging that Apple does not have expert testimony on that point in the record. There's nothing to show that these claims are invalid. Can you give me the appendix citations that show you raised this issue below? We raised this issue as challenging Apple's overall theory. But we understood Apple's theory to be in Apple's expert declaration to see that the light was being directed towards the center. So we didn't separately challenge these claim limitations below because we understood Apple's expert theory to be, and looks like on its face as to what it says, that light as a whole, on average, mean, would be directed towards the center. And so Apple's argued waiver. We understand that's an issue here. And our view is, we cited the case that conscientiousness is required, not clairvoyance. We really don't think we could have contemplated that the board would reinterpret Apple's testimony regarding the flow of light to that detector as just pertaining to a single ray of light. When if you look at that testimony, it clearly says overall light is directed towards the center. But even if this court were to find that waiver could apply, we know that waiver is discretionary, that's under Syngenta. And this court tends to not apply waiver, at least in some circumstances, when the record is clear so that this court can make a decision. Just to sum up, though, so I make sure I have the record clear. You did not independently challenge the mean path length limitation, right? That's correct. And you also didn't independently challenge that in the earlier appeal we talked about, 1631? That's correct. Thank you. Our view is, when you look at that testimony, we did not, and we don't think we could have reasonably contemplated the board would reinterpret that testimony. And interpreting this mean path length provision and his description of the light. Remember, he doesn't say a ray of light in his initial declaration. That was later. The light is directed towards the center. But even if we should have, where the record's adequately developed, that's in capsule. Then this court obviously has discretion to go ahead and decide the issue. And we think the board's reasoning is clear. We think it's wrong. We think it's clearly wrong. But the board interpreted that as pertaining to a single ray of light. And if that's true, there's just no evidence in connection with the petition or anywhere else that those claims are invalid. And just briefly, reasonable expectation of success. I've already made the point. We think the court's precedent requires a clear evidence-based description of the combination and how it works. And in particular, we think that the board should have addressed Apple's experts' extensive testimony about how complex it is to determine where light would fall in the detector and choose a particular lens shape. And all the complexity of that, we think the board did not consider, the board should have considered. And what we don't have from these pictures, a clear understanding of what this combination, a person of skill in the art, what that combination would look like. Which takes away our ability to challenge that combination. And it also makes it not clear whether it would actually satisfy the claims or which claims. For example, the protrusion height claims. Without a clear description of the combination, we can't know that. So I will stop there, unless Your Honor has more questions. Your Honors. Thank you. Do you want to take the court? Lauren Degner for Apple. I'm going to start with counsel's argument with respect to their not being a motivation to use a single cover when one was combining Aizawa and Inokawa. And I would state very simply that Aizawa uses a single cover. Inokawa uses a single cover. And there's frankly no need to have a motivation to keep something that's actually in both references. Focusing, I guess we'll go back to the pronounced curvature point. And I think counsel's main objection is sort of a repeated one. That the board somehow didn't adequately reconcile how a particular lens could both direct light towards the detectors based on the convexivity there. And the idea that it would also generally send light towards the center. And again, just so the court has it, I can refer you to the testimony in our expert appendix 3576-77. Really paragraph 32 talks about, and 33 talks about how it's the same figure without the red arrows. But talks about how light, far from focusing light to a single central point, would have understood that Osaki's cover provides a slight refactoring effect such that light rays that may have missed the active detection area are instead directed towards the area as they pass through the interface provided by the lens. So again, through the substantial evidence lens, there's more than enough in this record to support the board's findings with respect to this issue of motivation to combine between Aizawa and Inokawa. The last thing I will touch on, I think, is these dependent mean path length claims. Your honor is absolutely right, the board's discussion of it is short given the treatment it received during briefing before the board. Talks about why it is that the mean path length is shortened because of the light being more directed instead of obliquely angled. This testimony is, again, substantial evidence to support the invalidity of these dependent claims. And I think it's improper to fault the board for not devoting more pages to this issue when Masumoto himself did not elaborate on this point before it. I apologize, there is this issue of reasonable expectation of success. Again, Masumoto's arguments in this regard, I think, ignore the board's findings that one of skill and the art would have had an understanding of these basic optics principles on which the board would lie. This is something the board found a person of skill and the art would have. That's not surprising given the definition of a person of skill and the art, including people with electrical engineering degrees, trained in electrical, computer science, whatnot. And our expert points out that these sort of basic principles would be encountered by anyone with a BS in those sorts of degrees. So the reasonable expectation of success here really rises or falls with the notion that Masumoto advances to kind of derail the motivation in general. A person of skill and the art would have understood that convexity of a lens can be tailored so that the light will be delivered to the place where it would do most good, is some of the language we saw in the testimony. But the board's finding that one of skill and the art would have been able to tailor such a lens is supported by substantial evidence. If the court has no questions. Thank you, Ms. Tegman. Mr. Lawson has five minutes plus if you need it. I will not need it. And I will just respond briefly. Certainly throughout these appeals, Apple's argument has been that there's substantial evidence. But we've pointed to specific errors and we think under this case law, those errors support reversal or remand. And we think that looking at the evidence, special evidence requires an examination of the record as a whole. And we don't think that happened here. And I think the board's record leaves more questions than answers. How can a lens concentrate light in the center and also at the periphery? How can a lens concentrate light everywhere? And if it would really be known to a person of skill and the art that they would want to place the greatest curvature near the detector, why doesn't that appear at any document? Why does Inikawa show errors pointing to the center? And why did Apple's expert testify that Inikawa explains and would motivate a person of skill and the art to direct light towards the center? And, you know, why do we see so many different illustrations of Apple's combination? And, you know, if this is really, you know, if the greatest curvature or in this case the most pronounced curvature or increased light everywhere, if that's really something that would be known of skill and the art and that would cause a person of skill and the art to make these changes, why doesn't that appear anywhere in Apple's petitions and declarations? And I will stop there unless you all have questions. Thank you both for shedding concentrated light on these cases. And this case is submitted.